BOLIN, Judge.
Friendly Finance Service Mid City, Inc. instituted this action to recover $4,527.03, the face amount of a note signed by defendants, plus interest from date of maturity, attorney’s fees and costs. Plaintiff also asked for enforcement of a chattel mortgage allegedly executed as security for the debt. Without assigning written reasons the trial judge rendered judgment in favor of plaintiff in the amount prayed for, maintained a writ of sequestration previously issued, and ordered the property sold. Defendants appeal.
Appellants contend numerous errors were committed by the lower court, including its failure to hold the note was usurious and in holding the entire mortgage was valid when certain property was not decribed on the original instrument nor attached at the time of signing. However, the error which we consider most pertinent on this appeal is the charge that appellee has violated the provisions of the Louisiana Direct Vehicle Loan Act, R.S. 6:970, et seq. particularly R.S. 6:973, and as a result should be subject to the penalty provision of R.S. 61960 prohibiting the company from collecting any interest on the loan.
While plaintiff is concededly licensed under both the Sales Finance Company Act (R.S. 6:951, et seq) and the Direct Vehicle Loan Company Act (R.S. 6:970, et seq), the present proceeding is brought under the latter act. These acts purport to govern all activities of both motor vehicle sales companies and of companies engaged in the lending of money on promissory notes secured by liens or mortgages on motor vehicles. When a loan is made under the Direct Vehicle Loan Company Act, the company shall make the contract in conformity with R.S. 6:956. Additionally, the lending company is required by R.S. 6:973 to disclose the following information in the contract, a copy of which it must furnish the borrower : the amount of the loan; the amount, if any, included for insurance and other benefits ; the amount of official fees; the principal balance; the amount of the finance charge; the time balance; the number of installments and the due date.
In requesting affirmation of the lower court’s judgment appellee urges the applicability of the second part of the first sentence in Civil Code Article 1939 and the second exception in Civil Code Article debt”, or of interest which is “capitalized” 2924. In support of these contentions ap-pellee cites a number of cases interpreting these two articles so as to allow recovery either of “interest on interest”, where it is added to the principal, and “made a new *646 or “discounted”, i. e., where the principal amount of the note includes interest or “discount” and calls for no more than 8% per annum interest after maturity.
We have studied the record, the cited statutes, cases and codal articles at some length, as well as numerous law review articles and comments, in an effort to discover the proper approach to this case. From this research we conclude the articles and cases cited by appellee are neither necessary nor appropriate to a resolution of the present controversy. We conclude we need only apply the appropriate provisions of the two acts referred to above which were passed by the legislature for the purpose of controlling credit transactions dealing with motor vehicles.
Sanders testified to the following facts upon which the charge of usury is founded: on December 11, 1964, Sanders borrowed from plaintiff approximately $1,500 to pay off a mobile home or house trailer. [There is testimony the collateral for the original loan included a 1964 Oldsmobile in addition to the trailer.] At that time he signed a note for $2,070, which included the amount of the loan together with finance charges, (pre-figured interest) and other handling charges. In March, 1965, Sanders’ father borrowed about $450 from plaintiff for which he signed a note for $600. From that date until April 29, 1969, defendant repeatedly refinanced or obtained extensions of time within which to pay his original debt. On each occasion the finance company would add accrued interest, calculate future interest and include these sums as the principal amount of the debt. Although Sanders made payments totaling $1,895.80 during the course of these negotiations, nevertheless plaintiff alleges there remained a balance due on April 30, 1969, of $3,833.99, which included all past due principal of both notes together with the finance charges added each time the obligation was renewed. A check for $3,833.99 was issued by plaintiff to defendant who, in turn, paid off the balance due to plaintiff and on April 30, 1969, signed the note upon which this action was brought.
Harkins, manager of Friendly Finance, testified the final note signed by defendants included the $3,833.80 plus $693.04 as prepaid interest or finance charge figured at 2% per month for nine months, and reflected a debt of $4,527.03 due December 30, 1969, with 8% interest from maturity. The principal sum included both the obligation of Sanders and that of his father. Plaintiff filed suit June 5, 1970, at which time a writ of sequestration issued covering the property described in the mortgage and also covering the farm machinery described on a sheet of paper, which was stapled to the mortgage.
Sanders admits he received a letter, dated April 23, 1969, from Harkins advising him he could “renew” both his account and that of his father and thereby give him additional time in which to arrange the necessary funds needed to retire both accounts. By this letter, a copy of which is filed in the record, Harkins suggested that, although the major part of the farm equipment was already mortgaged, the household goods could be used as additional collateral. He further requested Sanders to bring his wife and father to the office in Monroe to sign or ‘finalize’ the accounts. Sanders testified his wife did not accompany him but that he took the note home with him and she signed it there although she did not sign the mortgage. He testified he did not ‘intend’ to mortgage all the chattels described on the separate piece of paper attached to the mortgage, and that it was not attached when he signed the mortgage. The attached description was typed on the letterhead of Friendly Finance Service and contained no date, signature or other identifying mark.
In view of our conviction that the Direct Vehicle Loan Company Act is controlling throughout this transaction, we pre-termit a discussion of the long and arduous history of Louisiana Civil Code Articles 2924, 1939 and Louisiana R.S. 9:3501. Suffice it to say that, by whatever name plaintiff chooses to call it, the amount charged in excess of the loan principal is a “finance charge” and cannot be classified as “dis *647 count” in order to allow the charging of usurious interest.
Every section of the two acts controlling the financing of new vehicles or the lending of money on older vehicles imposes on the seller or lender the mandatory duty to comply with each section of the act. From the repeated use of the word “shall”, we conclude the legislature intended that the act was designed to allow the charging of the high monthly interest rate provided in R.S. 6:957 only when the lender or seller complies strictly with each provision.
The two sections of the acts with which we are here most concerned are La.R.S. 6:973 and 6:960, providing:
“973. Requirements and prohibitions as to direct vehicle loans
“The provisions of R.S. 6:956, subdivisions A, B, D, F, G, H, I and J shall apply to any direct vehicle loan. In addition thereto the contract or agreement upon which the direct vehicle loan is made shall include:
(1) The amount of the loan;
(2) The amount, if any, included for insurance and other benefits, specifying the types of coverage and benefits;
(3) The amount of official fees;
(4) The principal balance, which is the sum of items 1, 2 and 3;
(5) The amount of the finance charge:
(6) The time balance which is the sum of items 4 and 5, payable in installments by the borrower to the lender, the number of installments, the amount of each installment and the due date or period thereof.”
(Emphasis added)
“960. Penalties
“A. Any person who shall wilfully and intentionally violate any provision of this Chapter or engage in the business of a sales finance company in this state without a license therefor as provided in this Chapter shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not exceeding five hundred dollars or by imprisonment for not to exceed six months in jail, or both.
“B. Any seller or holder, willfully violating R.S. 6:956 or R.S. 6:957, shall be barred from recovery of any finance charge, delinquency or collection charge on the contract.’
(Emphasis added)
The' chattel mortgage involved herein was prepared by plaintiff on its own printed form. This form contains the provision, “If a motor vehicle is to be included, the following disbursement is herein submitted as per requirement of the Motor Vehicle Act:
If a motor vehicle is to be included in this mortgage, the following disbursement is herein submitted as per requirement of the Motor Vehicle Sales Finance Act:

*648 None of the above blanks was filled in nor does there appear anywhere in the note or mortgage information as to the amount of the loan, the insurance, the official fees, the principal balance, or the finance charge as required by R.S. 6:973, supra. The penalty for failure to comply with the sections of the statute requiring disclosures is forfeiture of any finance charge, delinquency or collection charges on the contract. [R.S. 6:960, supra].
“Finance charge” must, of necessity, include interest since no specific mention of interest is made in the act. Louisiana R.S. 6:957, limiting the amount to be charged on the loan principal, refers only to a finance charge in the following language :
“A. Notwithstanding the provisions of any other existing law, a retail installment transaction may include a finance charge not in excess of the following rates:
Class 1. Any new motor vehicle designated by the manufacturer by a year model not earlier than the year in which the sale is made, an amount equivalent to one and one-fourth per cent (1:14%) Per month simple interest on the declining balance.
Class 2. Any new motor vehicle not in Class 1 and any used motor vehicle designated by the manufacturer by a year model of the same or not more than two years prior to the year in which the sale is made, an amount equivalent to one and three-fourths per cent (1 j4%) per month simple interest on the declining balance.
Class 3. Any used motor vehicle not in Class 2 and designated by the manufacturer by a year model not more than four years prior to the year in which the sale is made an amount equivalent to two and one-fourth per cent (2]4%) per month simple interest on the declining balance.”
(Emphasis added)
The question of whether the failure of a loan company to comply with the mandatory provisions of R.S. 6:973 is willful, requiring forfeiture of finance charges, delinquency or collection charges appears to be res nova. Since paragraph “B” of R.S. 6:960 has not, so far as we have been able to determine, been previously interpreted by a Louisiana court, we are confronted with the question of the applicability of that section to the facts before us. As heretofore pointed out, both of the acts, parts of which are quoted above, make compliance with every provision mandatory on the lender [or seller]. Since Friendly Finance is licensed under and relies strictly on the Direct Vehicle Loan Act to permit it to charge and recover interest of two and one-fourth per cent per month, [finance charge], which is a much higher rate than the maximum 8% per annum allowed by Louisiana Civil Code Article 2924, we are of the opinion plaintiff must be charged with knowledge of every requirement of this act. Charged with such knowledge, we conclude its failure to comply must be said to be willful. Black’s Law Dictionary defines “willful” as proceeding from a conscious motion of the will; voluntary; intending the result which actually comes to pass; not accidental or involuntary but knowingly.
Variously expressed, the term “willful” has been defined in 94 C.J.S. Willful, page 622,
“The words ‘willful’ and ‘willfully,’ as ordinarily employed, mean nothing more than that the person, of whose action or default the expressions are used, knows what he is doing, intends what he is doing, and is a free agent; that is, that what has been done arises from the spontaneous action of his will. Thus the terms imply a conscious act of the mind and denote an attitude of the mind and will, but they import something more than a mere exercise of the will, and include the idea of consciousness or knowledge, that is, knowledge of all the circumstances * * *.
*649 ******
“The terms are also employed to denote an intentional act, an act done intentionally or purposely, as distinguished from an accidental act, an act done by accident, or accidentally, or carelessly, thoughtlessly, heedlessly, or inadvertently, or otherwise beyond the control of the person to be charged.
******
“The terms * * * are sometimes used to signify that a person has failed to obey a statute, having knowledge of the facts. The word ‘willfully’ is used to describe the attitude of a person who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements.”
Nothing in this record raises the inference that plaintiff unwittingly omitted to fill in the spaces provided in its own printed mortgage form. The inference to be drawn is to the contrary; having had the form printed, naming Friendly Finance Service Mid City, Inc. as payee, and having admittedly had the mortgage executed in its own office before two witnesses employed by the company and notarized by its manager, Mr. Harkins, we find that the company willfully violated Louisiana Revised Statute 6:973. Consequently, we conclude plaintiff is barred from recovering any finance charge, delinquency or collection charge on the contract under R.S. 6:960.
This brings us to the difficult question of determining exactly how much “finance” charge should be disallowed, and how much unpaid principal remains due on the original loan. We have only the testimony of defendant Sanders that he borrowed $1,400 or $1,500 in 1964 to pay off the mobile home or trailer listed on the mortgage. Further, he testified he received no more cash from plaintiff at any time. Additionally, he testified his father received $450 from the loan company, for which a $600 note was executed. On cross-examination, Harkins, plaintiff’s manager, testified he did not recall how much the original loans were, but that he knew the company had been “carrying” the Sanders note since 1964. He stated he did not know whether defendant had received any more money since the original loan, nor did he remember or have a record of the interest or finance charge included in each of the transactions. Since plaintiff company would or should have had access to any records or information which would tend to contradict defendant’s testimony, and since it failed to produce any such evidence, we accept defendant’s version of the various transactions as uncontradicted and true.
The following information regarding dates and amounts of the renewal notes and interest payments were confirmed by both parties. Sanders obtained extensions of time to pay his original debt by signing additional notes as follows:
Date Amount of Note
December 9, 1966 $ 2,011.20
December 24, 1966 1,932.94
July 2, 1968 2,011.26
October 24, 1968 2,725.00
April 30, 1969 4,527.03
Receipts for payments made by Sanders in the following amounts and dates were introduced into evidence and are in the record:
Date Amount of Payment
February 25, 1966 $ 643.46
December 12, 1967 174.67
April 10, 1968 247.45
July 2, 1968 358.22
October 24, 1968 472.00
Total $1,895.80
Since the only evidence in the record with regard to the original principal is the uncontradicted testimony of defendant, we conclude the principal of both loans totalled $1,950. Having concluded Friendly Finance knowingly violated the mandatory requirements of R.S. 6:973 and is thus not entitled to recover any finance charges, we *650 will apply the payments totalling $1,895.80 to the principal, leaving a balance of $54.20.
We find the list of farm equipment on the letterhead and allegedly attached to the original mortgage has no legal effect, particularly since it was unsigned, undated and was not embodied in the original mortgage. Additionally, defendants deny these items were intended to be included in the mortgage, or that the list was attached to the mortgage when Mr. Sanders signed it. There is no evidence to contradict this statement.
For the reasons assigned the judgment appealed from is partially reversed, and it is amended to reduce the amount of the judgment in favor of plaintiff, Friendly Finance Service Mid City, Inc. and against defendants J. Matt and Cathryn Sanders from the sum of $4,527.03, with interest, attorney’s fees and costs, to the sum of $54.20 with 8% interest from December 30, 1969, until paid.
It is further amended to delete and exempt from the effect of the mortgage the following described property: 1 Massey Ferguson Diesel Tractor, #CDM 808556; 1 set of McCormick Middle Busters; 1 Massey Ferguson Cultivator, #753-712-21; 1 Amco Hipper; 1 Massey Ferguson Rotary Hoe; 1 Massey Ferguson Row Conditioner, #58528; 1 Massey Ferguson 4 Row Planter, Ser. #1252,001197, Model MF-80; 1 Holland Transplanter, Ser. #157263; Massey Ferguson (Front Mounted) Cultivator, #49996 ; 2-Row Massey Ferguson Combine Ser. '#91502465; 1 International (Rear Mounted) Cultivator for 460 Formall Tractor; 1 International Harvester Cotton Picker, Ser. #1889E; 1 International Harvester Combine, Model #151, Ser. #8354.
Otherwise, the judgment is affirmed except plaintiff is assessed with all costs of these proceedings, including the cost of this appeal.